IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　*Ex rel.*<br><br>Frank Kurnik<br><br>　　　　Plaintiff-Relator,<br><br>vs.<br><br>PharMerica Corp; and Kindred Healthcare Inc.,<br><br>　　　　Defendants. | C/A No. 3:11-cv-01464-JFA<br><br><br><br>**ORDER** |

## I.　INTRODUCTION

In this *qui tam* action, brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, as well as under similar laws in twenty-eight states, the District of Columbia, and the city of Chicago under their respective state and local false claims acts, Frank Kurnik ("Kurnik") asserts claims of fraud on the Government by PharMerica Corp ("PharMerica") and Kindred Healthcare Inc. ("Kindred") (collectively "Defendants")[1]. Kurnik filed his original complaint on June 14, 2011 and his operative amended complaint on April 24, 2014. Kurnik alleges that Defendants solicited and received illegal kickbacks from Amgen, Inc. ("Amgen")—in multiple forms of remuneration—to induce physicians to switch patients from the drug Procrit to the drug Aranesp. This alleged kickback scheme resulted in false claims to the Government when PharMerica

---

[1] PharMerica was formed in 2007 when AmerisourceBergen Company and Kindred Healthcare Inc. spun off their long-term care pharmacy divisions (respectively PharMerica, Inc. and Kindred Pharmacy Services), to form PharMerica. As Kindred is named as a defendant in this action based upon the conduct of Kindred Pharmacy Services for which PharMerica is now the operative party, the motion to dismiss was brought on behalf of both defendants.

1

failed to disclose the true nature of its Amgen arrangements to Medicare and Medicaid; and as a result, the arrangements were not protected by the discount safe harbor to the Medicare Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b) (the "Anti-Kickback Statute").  Kurnik further alleges that Defendants assisted Amgen in its systematic and illegal misbranding of the drug Aranesp through off-label marketing and violations of continuing medical education rules and regulations, *inter alia*, by controlling speaker programs.  According to Kurnik, the misbranding of Aranesp, in violation of the Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301, *et seq.*, caused unlawful prescriptions of Aranesp to be submitted for payment by federal, state and municipal health care payors.

On January 13, 2015, Defendants filed the instant motion to dismiss alleging for the first time that the Court lacks subject-matter jurisdiction over Kurnik's claims under the first-to-file rule of the FCA, 31 U.S.C. § 3730(b)(5), which states "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  The Defendants argue that a *qui tam* action in Wisconsin, filed by relator Jennifer Denk, was pending when Kurnik filed his complaint and alleged the same material elements of fraud against PharMerica.[2]

On March 18, 2015, the Court heard oral arguments on the motion to dismiss.  For the reasons that follow, the Court denies the Defendants' Motion to Dismiss and finds that the Court possesses subject-matter jurisdiction over Kurnik's claims.

## II.     BACKGROUND

### a.  *The Denk Complaint*

---

[2] In 2014, Defendants filed multiple motions to dismiss—and a motion for interlocutory appeal of this Court's denial of their motions to dismiss—without ever asserting that any other action precluded Kurnik's claims under the first-to-file bar.  Counsel for PharMerica in this action also represents PharMerica in the Wisconsin action.

On July 23, 2009, relator, Jennifer Denk ("Denk"), filed a *qui tam* action against PharMerica in the United States District Court for the Eastern District of Wisconsin styled *United States ex rel. Denk v. PharMerica Corp.*, Civil Action No. 09-cv-00720-CNC (E.D. Wis.), alleging violations of the FCA (the "Denk Action"). Denk's original complaint alleged, *inter alia*, that PharMerica dispensed medications without a legally valid prescription from a physician, which Denk maintained resulted in PharMerica's submission of false claims to Medicare Part D and Medicaid.

Denk filed an amended complaint ("the Denk Complaint") on January 1, 2010. The Denk Complaint added new allegations that PharMerica "arranged for access/performance rebates from drug manufacturers" and accepted lavish meals in exchange for steering patients to pharmaceutical products, both inducing PharMerica to prefer the manufacturer's product. Denk explained that upon information and belief, PharMerica failed to disclose the details of its rebate arrangements and dinner events to "Part D Sponsors, Medicare, Medicaid, the patients receiving the drugs or the doctors prescribing the drugs." As a result, the arrangements were not protected by the discount safe harbor to the Anti-Kickback Statute and resulted in the submission of false claims to the Government.

The Defendants represent to the Court that in 2010, after Denk filed her complaint, and before Kurnik initiated this action, the Government began to conduct an investigation into PharMerica's rebate arrangements with pharmaceutical manufacturers and its recommendation of preferred products through therapeutic interchange programs. On May 28, 2013, after almost a three-year investigation, the Government notified the Wisconsin court of its decision not to intervene with respect to Denk's kickback claims, but to intervene with respect to Denk's claims related to dispensing medicine based on inadequate prescriptions. The Government filed its

3

Complaint in Intervention against PharMerica with respect to these claims on August 9, 2013. Importantly, Denk voluntarily dismissed her kickback claims without prejudice on November 20, 2013. The Wisconsin court administratively closed the Denk Acton on September 26, 2014.[3]

### *b.* **The Kurnik Complaint**

Kurnik filed his original complaint in this action under seal on June 14, 2011. The Government declined to intervene as to PharMerica and the complaint was unsealed on November 26, 2013. Kurnik filed the operative amended complaint (the "Kurnik Complaint") on April 24, 2014.

In short, the Kurnik Complaint alleges fraudulent schemes carried out by the Defendants that (1) included accepting and soliciting kickbacks from Amgen for switching nursing home patients from Procrit to Aranesp in violation of the Anti-Kickback Statute; and (2) aiding and/or conspiring with Amgen to misbrand Aranesp, in violation of the Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301, *et seq.*, causing unlawful prescriptions of Aranesp to be submitted for payment by federal, state and municipal health care payors.

Concerning the kickback claims, the Kurnik Complaint alleges more than just rebates and dinners, as alleged in the Denk Complaint, and informs the Government that Defendants "solicited and received remuneration from Amgen Inc. in the form of purported discounts, purported market-share rebates, grants, honoraria, speakers fees, consulting services, dinners, travel, or fees for the purchase of data" and this remuneration induced PharMerica to prefer Aranesp over Procrit.

---

[3] The Wisconsin court administratively closed the Denk Action after the parties notified the court that they were engaged in serious settlement negotiations. The Wisconsin court provided the parties with a deadline of March 15, 2015 to re-open the matter if the parties' settlement negotiations broke down. On March 13, 2015, the Government requested the Wisconsin court to re-open the matter, which PharMerica opposed. As of April 1, 2015, the Wisconsin court has not re-opened the matter.

### III. LEGAL STANDARD

The FCA imposes civil liability on persons who knowingly submit false claims to the Government. 31 U.S.C. §§ 3729, *et seq.* To that end, the FCA establishes a process that permits a private citizen, who becomes a relator, to initiate a civil action known as a *qui tam* against perpetrators of fraud. *See* 31 U.S.C. § 3730(b). While encouraging whistleblowers, however, the FCA also "seeks to prevent parasitic lawsuits based on previously disclosed fraud." *U.S. ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 184 (4th Cir. 2013) *cert. granted sub nom. Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*, 134 S. Ct. 2899, 189 L. Ed. 2d 853 (2014) (hereinafter "*Carter II*"). "To reconcile these conflicting goals, the FCA has placed jurisdictional limits on its *qui tam* provisions," including the first-to-file rule, 31 U.S.C. § 3730(b)(5), which parties raise under a Rule 12(b)(1) motion to dismiss. *Id.*

Under the first-to-file rule, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). In other words, if one person "brings an action" then no one other than the Government may "bring a related action" while the first is "pending." The Fourth Circuit has described the first-to-file bar as "an absolute, unambiguous exception-free rule." *Carter II*, 710 F.3d at 181. "Therefore, whoever wins the race to the courthouse prevails and the other case must be dismissed" if application of the first-to-file rule commands. *Id.*

Subject-matter jurisdiction of an FCA claim through a Rule 12(b)(1) motion to dismiss may be challenged in one of two ways. First, a party may launch a facial attack by contending "that a complaint simply fails to allege facts upon which subject-matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If a complaint is attacked facially

5

for lack of subject-matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

Alternatively, one may contend that the complaint's jurisdictional allegations simply are not true or that other facts, outside the four corners of the complaint, preclude the exercise of subject-matter jurisdiction. *See id.*; *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In such a factual attack of the complaint's jurisdictional allegations, the plaintiff carries the burden of proving subject-matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In that situation, a court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219. Further, the presumption of truthfulness does not apply, and this Court may decide disputed issues of fact related to subject-matter jurisdiction. *Kerns*, 585 F.3d at 192.

Here, the Defendants launch a factual attack on the Kurnik Complaint's jurisdictional allegations. Defendants argue that because of the first-to-file rule of the FCA, other facts outside the four corners of the Kurnik Complaint preclude the Court's exercise of subject-matter jurisdiction. Therefore, whether the first-to-file rule bars Kurnik's claims depends on a comparison of the *date* and *content* of the Kurnik pleadings with the *date* and *content* of the Denk pleadings. *See U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 848 (D. Md. 2013) (emphasis added); *In re Natural Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 964 (10th Cir. 2009) ("The first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints."); *see also Anderson v. Fed. Deposit Ins. Corp.,* 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (stating, in context

6

of Rule 12(b)(1) motion to dismiss, "a district court should properly take judicial notice of its own records").

Additionally, when determining whether the first-to-file rule bars a subsequently filed complaint, the Court must examine both complaints on a "claim by claim" basis. *U.S. ex rel. LaCorte v. SmithKlineBeecham Clinical Labs., Inc.*, 149 F.3d 227, 235–36 (3rd Cir. 1998); *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 579 (E.D. Va. 2011).

### IV. DISCUSSION

#### *a. Temporal Analysis under the FCA First-to-File Rule*

To determine if a claim is barred by the first-to-file rule, this Court first must determine if the earlier filed claim was "pending" when the later filed claim was brought. *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013). The Fourth Circuit has stated that the "pending" analysis focuses on "facts as they existed when the claim was brought to determine whether an action is barred by the first-to-file bar." *Carter II*, 710 F.3d at 183.

Courts commonly find it helpful to consider the rulings of sister courts when those rulings address issues nearly identical to issues pending before this Court; and, while they carry no precedential value, such determinations can offer persuasive reasoning. For that reason, the Court finds extremely persuasive the FCA first-to-file analysis of our sister court in Maryland, *U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840 (D. Md. 2013).

The *Palmieri* court held that it had subject-matter jurisdiction over Mr. Palmieri's FCA action because the first-to-file rule no longer barred his claims when he filed an amended complaint *after* similar claims were voluntarily dismissed in the first-filed *United States ex rel. Littlewood v. King Pharmaceuticals, Inc.,* Civ. No. ELH–10–973 (D. Md.). *Palmieri*, 928 F. Supp. 2d at 850. Specifically, the *Littlewood* relator voluntarily dismissed the relevant claims on

August 17, 2011 and Mr. Palmieri amended his complaint on October 25, 2011; thus, Mr. Palmieri persuasively argued that his claims in his amended complaint were not barred because the *Littlewood* relator, after the Government declined to intervene, chose not to exercise her right to individually litigate the claims. *Id*. at 849.

The *Palmieri* defendants countered and argued that "by the plain text of 31 U.S.C. § 3730(b)(5), the first-to-file rule applies at the time when a second relator 'brings' an action that is related to a pending *qui tam* case." *Id*. at 850. Therefore, they continued, the jurisdiction of the [c]ourt depends upon the state of things at the time of the action brought,' [and] a court determines whether the first-to-file rule bars a *qui tam* action 'by looking at the facts as they existed at the time that action was brought.' *Id.* (quoting *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004)); *see also Carter II*, 710 F.3d at 183 (The Fourth Circuit decided *Carter* thirteen days after the Maryland court issued its *Palmieri* decision).

The *Palmieri* court disagreed with the defendants. To begin, Judge Ellen Lipton Hollander acknowledged that if Mr. Palmieri did not file an amended complaint *after* the *Littlewood* first-filed claims were dismissed, then the first-to-file rule would bar Mr. Palmieri's claims.[4]  *Id.* Nevertheless, Judge Hollander explained that the amended complaint was a subsequent event of jurisdictional significance. *Id*. Primarily relying on a Seventh Circuit case, Judge Hollander continued and reasoned that the first-to-file bar "applies only while the initial

---

[4] The Maryland court explained:
> Precedent uniformly supports the view that the subsequent dismissal of a first-filed *qui tam* action, without more, cannot cure the filing of a second *qui tam* action while the first action was pending…. Therefore, if the only change in the status quo since the filing of [Mr. Palmieri's] original complaint had been the dismissal of *Littlewood*, I would agree that the first-to-file rule would bar this suit.

*Palmieri*, 928 F. Supp. 2d at 850 (internal citations omitted).

complaint is pending." *Id.* (quoting *U.S. ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 365 (7th Cir. 2010)). Further,

> [i]n *Chovanec,* the Seventh Circuit approved the district court's dismissal of a *qui tam* suit because of the first-to-file bar, but held that the dismissal should have been without prejudice.… [T]he appellate court … [stated that] because the first-filed *qui tam* action was no longer pending the relator is entitled to file a new *qui tam* complaint—entitled, that is, as far as § 3730(b)(5) goes.... [B]ecause Chovanec may be able to frame a new complaint that would survive a motion to dismiss ... the current proceeding should have been dismissed without prejudice. Indeed, on remand the district court in *Chovanec* permitted the relator to file an amended complaint, in lieu of dismissal of the suit.

*Id.* (internal citations omitted) (emphasis in original).[5]

Judge Hollander also found the Tenth Circuit's discussion in *In re Natural Gas Royalties*, 566 F.3d at 964, persuasive and quoted:

> [i]f the first-to-file bar had been meant simply as a more draconian public disclosure bar, Congress would not have limited it to "pending" actions. While filing the complaint might put the government on notice, and while the government might remain on notice while the action is pending, the government does not cease to be on notice when a relator withdraws his claim or a court dismisses it. And yet, if that prior claim is no longer pending, the first-to-file bar no longer applies. The "pending" requirement much more effectively vindicates the goal of encouraging relators to file; it protects the potential award of a relator while his claim remains viable, but, when he drops his action another relator who qualifies as an original source may pursue his own.

---

[5] The Maryland court also relied on a D.C. Circuit case and explained that,
> [s]imilarly, in *Batiste* … 659 F.3d 1204, the D.C. Circuit upheld a district court's dismissal of a second relator's complaint under the first-to-file rule, despite the fact that the first-filed suit had been dismissed. As a fallback argument, the second relator argued that his suit should have been dismissed without prejudice, implying that the second relator would like the opportunity to amend his complaint and bring the case again. The D.C. Circuit held that this argument was waived, observing that the first suit had been dismissed eighteen months prior to the *Batiste* dismissal, and faulting the second relator because, during that time, he never asked for leave to amend his complaint in the district court, thereby suggesting that the filing of an amended complaint could have cured the defect.

*Id.* at 850–51 (internal citations omitted).

9

*Id.* at 851. Finally, Judge Hollander held that an amended complaint is jurisdictionally relevant in the context of the first-to-file rule and explained that:

> [T]he Supreme Court, in a False Claims Act case … has indicated that an amended complaint is jurisdictionally relevant. In *Rockwell International Corp. v. United States,* 549 U.S. 457, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007), the Court held that an amended complaint had to satisfy the jurisdictional requirement that a *qui tam* claim not be based on publicly disclosed material unless the relator is an original source, regardless of whether the original complaint had cleared the public disclosure bar. The Court said that, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Id.* at 473–74, 127 S.Ct. 1397. It added: "The rule that subject-matter jurisdiction 'depends on the state of things at the time of the action brought,' does not suggest a different interpretation." *Id.* at 473, 127 S.Ct. 1397 (internal citation omitted).

*Id.*

Importantly, *Palmeiri* distinguished *United States ex rel. Carter v. Halliburton Co.*, No. 1:11cv602, 2011 WL 6178878 (E.D. Va. Dec. 12, 2011) (hereinafter "*Carter I*") by explaining that the prior case that barred *Carter I* was dismissed before the court ruled, and the relator had not filed an amended complaint. *Carter I* was reversed and remanded on other grounds by the Fourth Circuit thirteen days after the *Palmieri* decision. *See Carter II*, 710 F.3d at 184. However, *Palmieri*'s distinguishing characteristics of *Carter I* remain constant despite the procedural history. On another relevant note, in *Carter II*, the Fourth Circuit relied both on *Chovanec* and on *In Re Natural Gas Royalties*; however, *Carter I/II* did not involve the same procedural history present in *Palmieri* and in the instant action.

Here, following the holding in *Palmieri*, Kurnik filed his operative amended complaint, the Kurnik Complaint, on April 24, 2014, a time when Denk's kickback claims were no longer pending, as she dismissed these claims on November 20, 2013. If this Court were to dismiss Kurnik's kickback claims, it would do so without prejudice, and the FCA first-to-file rule would

10

not preclude Kurnik from filing an identical pleading under a new case number tomorrow, as *Carter II*,[6] *Chovanec*, and *In Re Natural Gas Royalties* make clear. *Chovanec* is especially persuasive in the instant action because it is binding on the Denk Action, as Wisconsin falls under the Seventh Circuit. And, as noted above, on remand, the district court in *Chovanec* permitted the relator to file an amended complaint in lieu of dismissal. Furthermore, this Court finds that allowing Kurnik's claims to survive does not run afoul of the policy behind the FCA because it does not threaten Defendants with double recovery, as Denk voluntarily dismissed her kickback claims and thus, never recovered from PharMerica on such claims.

### b. *Material elements of fraud*

In light of the Court's resolution of the instant motion to dismiss under the "pending" analysis, discussed *supra*, a comparison of the Denk Complaint with the Kurnik Complaint is not necessary.[7]

---

[6] The Fourth Circuit states in *Carter II*
> that once a case is no longer pending the first-to-file bar does not stop a relator from filing a related case. In this case, both of the original actions have been dismissed. Because of this, the first-to-file bar does not preclude Carter from filing an action. The first-to-file bar allows a plaintiff to bring a claim later; this is precisely what a dismissal without prejudice allows a plaintiff to do as well. Therefore, Carter's only impediment at the moment is the district court's dismissal with prejudice. And, as we have already concluded the district court erred in dismissing Carter's complaint with prejudice.

710 F.3d at 183. The Fourth Circuit adopted the reasoning of the Tenth Circuit and quoted "if that prior claim is no longer pending, the first-to-file bar no longer applies … when [a relator] drops his action another relator ... may pursue his own." *Id.* (quoting *In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 963–64 (10th Cir. 2009)).

[7] Under the first-to-file rule, "a later suit is barred if it is based upon the 'same material elements of fraud' as the earlier suit, even though the subsequent suit may 'incorporate somewhat different details.'" *Carter II*, 710 F.3d at 182 (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001)). Consequently, the first-to-file rule does not require the exact same facts to be alleged in the later-filed case; rather, this Court must determine "whether the [subsequent complaint] alleges a fraudulent scheme the [G]overnment already would be equipped to investigate based on the [prior complaint.]" *U.S. ex rel. Rush v. Agape Senior, LLC,* No. 3:13-CV-00666-JFA, 2014 WL 6910480, at *4 (D.S.C. Aug. 18, 2014). When evaluating a

11

**V.    CONCLUSION**

Accordingly, the Court DENIES Defendants' Motion to Dismiss, ECF No. 187. In light of the fact that this case has been pending for more than three years, the parties shall continue to comply with all deadlines in accordance with the scheduling order issued by this Court on December 23, 2014.


IT IS SO ORDERED.

April 2, 2015                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                United States District Judge

---

first-to-file motion to dismiss, the only evidence needed to determine if a complaint is barred ... is the complaints themselves. *Palmieri*, 928 F. Supp.2d at 848.